UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-215 (DSD/JMM)

Pamela M. Angier,

Plaintiff,

v. **ORDER**

William J. Henderson,
Postmaster General, United
States Postal Service

Defendants.

Michael Mobley, Esq. and Mobley Law office, 90 Seventh Street South, Suite 4540, Minneapolis, MN 55402, counsel for plaintiff.

Mary Jo Madigan, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, counsel for defendants.

This matter is before the court on the defendants' motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative for summary judgment. Based on a review of the file, record, and proceedings herein, the court denies defendants' motion.

**BACKGROUND**

This case arises out of an employment dispute between plaintiff Pamela M. Angier and defendants William J. Henderson, Postmaster General, and the United States Postal Service

FILED 5-24-00
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. ____________
Deputy Clerk's Initials ______

(collectively referred to here as the "Postal Service" or "defendants"). Angier began her employment with the Postal Service in 1969. During her 29-year career, she worked in various clerk positions. In June 1994, Angier was assigned to defendants' Claims and Inquiry Unit. Angier asserts in this lawsuit that from the beginning of her assignment to this unit, her coworkers subjected her to sexual harassment and discriminated against her based on a mental disability.[1] She also alleges that her coworkers retaliated against her for complaining about the harassment.

On August 20, 1997, Angier sought and was granted a medical leave of absence. Despite receiving ongoing medical care for stress and depression, Angier resigned from her position with the Postal Service on May 18, 1998. In her resignation letter, she asserts her belief that she had been constructively discharged. Eight days later, on May 26, 1998, Angier filed a complaint with an Equal Employment Opportunity counselor. On November 1, 1999, the Postal Service issued its final agency decision on Angier's complaint and on January 27, 2000, Angier filed this lawsuit. Defendants now move to dismiss this action on the grounds that Angier failed to timely exhaust her administrative remedies.

---

[1] During her employment with the Postal Service, Angier received treatment from mental health professionals for what is alternately described in plaintiff's pleadings as post-traumatic stress disorder and major depression.

**DISCUSSION**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the court takes all facts alleged in plaintiff's complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the court construes the allegations in the complaint and reasonable inferences arising from the complaint in the light most favorable to the plaintiff. See Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). The court will dismiss a complaint only when it appears the plaintiff cannot prove any set of facts that support the claim. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (citations omitted). In other words, a motion to dismiss should be granted "'as a practical matter ... only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" Frey, 44 F.3d at 671 (quoting Bramlet v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974)).[2]

---

[2] To the extent that a court needs to consider matters outside the pleadings, a motion for judgment on the pleadings should generally be converted to a motion for summary judgment under Fed. R. Civ. P. 56. See Alexander v. Pathfinder, Inc., 91 F.3d 59, 63 (8th Cir. 1996). In this case, the court does not need to consider the affidavits submitted by the parties in order to make its ruling, therefore the motion will not be converted to a motion for summary judgment.

A federal employee must seek administrative review of her grievance before filing a suit for unlawful employment discrimination. See 42 U.S.C. § 2000e-16(b) & (c). Specifically, a federal employee must file an informal complaint with an EEO counselor within 45 days of the alleged discriminatory act. See 29 C.F.R. § 1614.105(a)(1). The question here is whether this 45-day administrative deadline runs: (1) from the date of the last reported act of harassment, which in this case occurred on July 31, 1997; (2) from the date Angier began her medical leave; or (3) from the date of her formal resignation from the Postal Service.

It is a well-settled principle that applicable administrative deadlines run from the time of the discriminatory act, not from the time of a later, inevitable consequence of that act. See Delaware State College v. Ricks, 449 U.S. 250 (1980); United Airlines v. Evans, 431 U.S. 553 (1977). Where that principle has been applied to a constructive discharge claim, courts have held that because constructive discharge is a distinct discriminatory act, rather than an inevitable consequence of the underlying discriminatory acts, the date of resignation triggers the relevant administrative limitations period. See Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1110-11 (9th Cir. 1998); Young v. National Ctr. for Health Servs. Research, 828 F.2d 235, 237 (4th Cir. 1987). However, neither of these cases have assessed whether an extended leave of absence prior to resignation alters the commencement of the

limitations period in a constructive discharge case. Defendants contend that the holding in White v. Honeywell, 141 F.3d 1270 (8th Cir. 1998) mandates a finding that the statute of limitations begins to run when an employee commences the leave of absence.

In White, the Eighth Circuit held as a matter of first impression that an employee who had been forced into an unpaid medical leave but had not quit her job could nonetheless maintain a claim for constructive discharge under Title VII. Id. at 1279. In a carefully-worded opinion, the appellate court explained:

> We are not prepared to say that "quit" is the magic word in a constructive discharge instruction. A person who has suffered a forced unpaid medical leave of absence, from which she is unable to return and which resulted from objectively intolerable working conditions, is in no better position than one who was forced to quit as a result of objectively intolerable conditions. In either case, the employer has, through objectively intolerable conditions, forced the employee out of active service. We believe it is sufficient for a plaintiff to prove that an employer deliberately rendered working conditions intolerable and thus forced the employee to permanently "leave" the employment.

Id.

Although the ruling clearly establishes that "the employee need not prove that she technically 'quit'" in order to maintain a constructive discharge claim, id., the court believes White does not stand for the broad proposition that whenever an employee takes a leave of absence prior to quitting, the administrative

limitations period on her constructive discharge claim begins to run when she goes on leave. First, the court notes that the White opinion is designed to expand a plaintiff's rights under Title VII, not foreclose them as defendants would urge here. Moreover, as the opinion itself recognizes, the fundamental issue in a constructive discharge claim is whether a reasonable person in the employee's shoes would conclude that working conditions have become so intolerable that she is "unable to return" to work and must "permanently 'leave' the employment." White, 141 F.3d at 1279.

Defendants properly argue that once an employee goes on medical leave, the alleged harassment stops and her working conditions become no more or less intolerable. For that reason, in many instances an employee's decision to seek a leave of absence will be synonymous with a decision that working conditions have become so intolerable that she is unable to return to work. However, as noted above, constructive discharge is not the inevitable consequence of a discriminatory act, and in some cases, an employee may return to work after a period of medical leave. Consequently, the court declines to establish a bright line rule that the administrative statute of limitations on a constructive discharge claim begins to run on the date an employee commences a leave of absence.

At this stage of the lawsuit, all reasonable inferences must be made in Angier's favor. Therefore, until the parties have

conducted discovery and established a full record in this case, the court must conclude that Angier's resignation from her position with the Postal Service on May 18, 1998, marks the date of her constructive discharge. Accordingly, her May 26th letter to the EEOC satisfies the applicable administrative deadline and defendants' motion to dismiss for failure to exhaust administrative remedies is denied.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendant's motion to dismiss is denied.

Dated: May 23, 2000

David S. Doty, Judge
United States District Court