UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PAMELA M. ANGIER,

Plaintiff,

v.

WILLIAM J. HENDERSON,
Postmaster General,

Defendant.

CIVIL NO. 00-215 (DSD/JMM)

REPORT AND RECOMMENDATION

The above matter came on for hearing before the undersigned on October 22, 2001 upon Defendant's Motion to Enforce the Settlement Agreement [Docket No. 42]. Eric Satre, Esq. appeared on behalf of Plaintiff; Mary Jo Madigan, Esq., Assistant U.S. Attorney, appeared on behalf of Defendant. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendant's Motion to Enforce the Settlement Agreement [Docket No. 42] be granted.

**FINDINGS OF FACT/REPORT**

In our consideration of this Motion we are guided by principles enunciated by the Court of Appeals for the Eighth Circuit. In Barry v. Barry, 172 F.3d 1011, 1013 (8th Cir.1999), the Court stated:

> "The district court has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous. Gatz v. Southwest Bank, 836 F.2d 1089, 1095 (8th Cir. 1988). In a diversity case, the settlement contract must be construed according to state law, Horton Mfg. Co. v. Tol-O-Matic, Inc., 973 F.2d 649, 651 (8th Cir. 1992), in this case the law of Minnesota. Minnesota law requires us to ascertain and give effect to the intent of the parties as

OCT 29 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

> expressed in the language used. *Id.* If the terms are ambiguous, the court must determine the intent of the parties, which is a question of fact that we review for clear error. Worthy v. McKesson Corp., 756 F.2d 1370, 1372 (8th Cir. 1985). The district court has considerable discretion in determining the procedure appropriate to a motion to compel settlement, and a hearing need be held only if there are substantial questions of fact that are not already a matter of record. Stewart v. M.D.F., Inc., 83 F.3d 247, 251 (8th Cir. 1996)."

Guidance is also provided by a decision from this District, in Bergstrom v. Sears, Roebuck & Co., 532 F. Supp. 923, 932 (D. Minn. 1982):

> "The primary point of reference in this case is the salutary principle that 'voluntary settlements of civil controversies are highly favored by courts and a valid agreement once reached, cannot be repudiated by the parties ....' Theatre Time Clock Co. v. Motion Picture Advertising Corp., 323 F. Supp. 172, 174 (E.D. La.1971). In addition, there is considerable case law that agreements to settle federal lawsuits need not be in writing to be enforceable. [Footnote omitted]. Green v. John H. Lewis & Co., 436 F.2d 389 (3d Cir. 1971) (per curiam). See Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981); Strange v. Gulf & South American Steamship Co., 495 F.2d 1235 (5th Cir. 1974); Theatre Time Clock Co. v. Motion Picture Advertising Corp., 323 F. Supp. 172 (E.D. La.1971).

The following skeleton chronology of dates in 2001 will be helpful in considering the Court's Findings concerning the settlement agreement.

**August 3** - District Court issues order dismissing Plaintiff's claim of discrimination. Claims for sex harassment and constructive discharge remain.

**September 13** - Case set for trial to commence October 29.
Order for Settlement Conference issued. Parties are ordered to meet to discuss settlement by September 21; Pretrial/Settlement Conference set for October 1.

**September 21** - Parties meet to discuss settlement. Settlement agreement reached.

**September 24** - Letter to Court from Counsel for Plaintiff, advising that a settlement agreement has been reached, requesting cancellation of October 1 Pretrial Settlement conference.

**September 25** - Plaintiff calls chambers of the Court, and states that the agreement was coerced, and asks that the October 1 conference be held as scheduled.

**September 27** - Defendant files Motion to Enforce Settlement. [Docket No. 42].

**October 1** - Pretrial/Settlement Conference held.
- Court issues Order [Docket No. 45] establishing process for determining Motion to Enforce Settlement.

**October 12** - Plaintiff files pleadings in opposition to Motion to Enforce Settlement.

**October 22** - Hearing held on Motion to Enforce Settlement. Parties were afforded an opportunity to present evidence. Motion taken under advisement.

The Court was presented with Affidavits from Defendant and from Plaintiff's initial counsel which substantiate that a binding settlement agreement was reached in this case on Friday, September 21, 2001. Under the terms of the agreement, Defendant is obligated to pay to Plaintiff the sum of $90,000 in full and complete settlement of her claims, in return for which Plaintiff will execute a General Release, and will dismiss her Complaint With Prejudice.[1] Both Plaintiff and her attorney agreed to the settlement. The fact of this settlement agreement is not contradicted by any evidence.

When Plaintiff objected to the enforcement of the settlement agreement at the conference on October 1, she contended that she had been coerced into the agreement. She contended that her attorney had forcefully advised her that the settlement was in her best interests, and had used a loud voice and strong gestures to communicate

---

[1] The complete terms of the agreement are set forth in Exhibit B to the Declaration of Mary Jo Madigan.

his view that the settlement was in her best interests. Plaintiff did not pursue this point in the pleadings filed after the October 1 hearing, nor at the hearing on October 22, 2001. (At that hearing, it was established that the first time Plaintiff suggested that she was not in agreement with the settlement came in a telephone call to her attorney on Sunday evening, September 23, 2001, when she learned that Defendant would be allowed 60 days to pay the agreed upon sum). We conclude that Plaintiff was not coerced in her decision to accept the settlement agreement.

In the pleadings filed by Plaintiff's new counsel, and at the hearing on October 22, 2001, Plaintiff urged that the settlement agreement should not be enforced because the process which was followed did not comply with Minnesota Law concerning Agreements to Mediate. Plaintiff argues that under Minn. Stat. § 572.35, subdivision 1, enforcement of "a mediated settlement agreement" may not be had, because the conditions for such enforcement were not met. In relevant part, Plaintiff relies upon this language: "A mediated settlement agreement is not binding unless: (1) it contains a provision stating that it is binding and a provision stating substantially that the parties were advised in writing [of information about the mediation process]."

Plaintiff failed to substantiate that the provisions of that law govern the settlement agreement which was reached in this case. The parties did not provide legal authority on the subject of whether this statute could have any application in a settlement conference held under the circumstances of this case, where the parties were ordered to participate in negotiations. But even if the terms of the statute might be held applicable generally, they do not apply here by their own terms. The statute applies only to an "agreement to mediate" and a "mediated settlement agreement," both of which are terms of special definition under the statute. Although the attorneys for the parties did sign a

document captioned "Mediation Agreement" (Exhibit 1 to the Affidavit of Mobley), Plaintiff herself notes that this agreement is not an "agreement to mediate" under Minnesota law, because it does not comply with all of the items specified in the definition. Similarly, the settlement agreement sought to be enforced in this case is not a "mediated settlement agreement." The parties were not proceeding under the Minnesota Law of Mediation, they were conducting settlement negotiations in preparation for a Pretrial and Settlement Conference to be held with this Court. The agreement reached at that meeting is enforceable without regard to the provisions of Minnesota law.

Plaintiff next contends that the "Mediation Agreement" which was entered into contains a provision which requires that any settlement agreement reached must be reduced to writing. Plaintiff herself was unaware of the provision until well after the settlement agreement was reached, and did not rely in any way upon the provision, but she correctly contends that her attorney had the authority to enter into this agreement on her behalf. Of course, since he had the authority to enter into the agreement on her behalf, he also had the authority to waive the provision calling for a contemporaneous writing, and permitting the simple terms to be reduced to writing at a more convenient time. Plaintiff's attorney also had the authority to enter into the settlement agreement itself. See Barry, 172 F.3d at 1015.

Finally, while it does not directly bear upon the resolution of this Motion, it appears from what the Court has been able to learn of the facts of this case, and the statement under oath by counsel for the Plaintiff, that the settlement agreement was provident from the point of view of what Plaintiff might otherwise have recovered (or failed to recover) if the matter had gone to trial.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that Defendant's Motion to Enforce the Settlement Agreement [Docket No. 42] be granted.

Dated: October 29, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before November 14, 2001 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before November 14, 2001.